UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| v. § | CRIMINAL NO. 4:20-CR-011-SDJ |
| § | |
| STEPHANIE LEIGH MILLIRON § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Stephanie Leigh Milliron's Emergency Motion to Reduce Sentence Under the Federal Compassionate Release Statute. (Dkt. #47). The Government has responded in opposition. (Dkt. #54). The Court ordered that the Government supplement its response with Milliron's administrative request for compassionate release to the warden at FMC Carswell. (Dkt. #57). The Government thus filed a Supplemental Response to Defendant's Request for Compassionate Release, further opposing Defendant's motion and providing the requested documents. (Dkt. #59). The Court, having considered the motion, the subsequent briefing, and the applicable law, **DENIES** the motion.

### I. BACKGROUND

Defendant Stephanie Leigh Milliron is serving a seventy-two-month term of imprisonment after she pleaded guilty to a violation of 18 U.S.C. § 1029(a)(3), use of an unauthorized access device, and a violation of 18 U.S.C. § 1028A, aggravated identity theft. (Dkt. #28). Milliron's projected release date is February 19, 2025. (Dkt. #47 at 1); (Dkt #54 at 1). At the time the instant motion was filed, Milliron had served approximately twenty-seven percent of her sentence. (Dkt. #47 at 1).

Milliron moved for compassionate release on June 14, 2021, (Dkt. #47), under 18 U.S.C. § 3582(c)(1)(A) based on the First Step Act of 2018, Section 603(b), which allows inmates to move for a reduction in sentence after exhausting administrative review by the Bureau of Prisons (BOP). Milliron's motion turns on her assertion that she suffers from serious medical and physical conditions—brought on by her cervical cancer—that substantially diminish her ability to provide self-care within the environment of a correction facility. In the motion, Milliron specifically claims to have squamous-cell cervical cancer and that, while *no stage had been determined*, CT scans were "suggestive" that the cancer had metastasized[1] to other parts of the body. (Dkt. #47 at 2). The motion includes several other allegations, including that Milliron (1) was not properly receiving prescribed medications; (2) was told by staff that she could not be assisted after experiencing "severe bleeding on two occasion[s], chest pains, and severe shaking;" and (3) that she was not "receiving *any cancer treatments*." (Dkt. #47 at 2) (emphasis added). Based on these allegations, Milliron describes her situation as "essentially cruel and unusual punishment" and requests that her sentence be reduced and that she be placed in home confinement. (Dkt. #47 at 7).

The Government moved for an extension of time to file its response in opposition to Milliron's motion. (Dkt. #50). Milliron vigorously opposed the extension, insisting that the Government should not be permitted additional time to respond,

---

[1] Metastatic cancer is "[c]ancer that spreads from where it started to a distant part of the body." *Metastatic Cancer: When Cancer Spreads*, NATIONAL CANCER INSTITUTE (Nov. 10, 2020), https://www.cancer.gov/types/metastatic-cancer. "For many types of cancer, it is also called stage IV (4) cancer." *Id.*

2

emphasizing the purportedly urgent nature of her motion given that she "has currently been *diagnosed with Stage 3* cervical cancer, and that diagnosis is expected to be upgraded to *Stage 4* following the results of additional tests that were scheduled [that day]." (Dkt. #51 at 1) (emphases added).

With her motion, Milliron attached medical records that dated from approximately December 2020 to February 2021. In opposition to the Government's extension of time request, Milliron failed to cite any additional records that could confirm her alleged Stage III, nearly Stage IV, cancer diagnosis. While medical records confirm that Milliron is indeed diagnosed with cervical cancer, (Dkt. #48-1 at 29), and doctors noted that early CT scans suggested that the cancer *may have* metastasized, (Dkt. #48-1 at 38), as discussed below, that was the near extent of truthful allegations in the motion and Milliron's subsequent briefing.

## II. LEGAL STANDARD

Milliron requests relief under the First Step Act's compassionate-release provisions. *See* 18 U.S.C. § 3582(c)(1)(A). Section 3582(c) was initially enacted as part of the Sentencing Reform Act of 1984, which authorized district courts to grant sentence reductions on the motion of the Director of the BOP if the BOP could establish that: (1) "extraordinary and compelling reasons" warranted a sentence reduction; (2) a reduction would be "consistent with the applicable policy statements" of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *accord United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021).

3

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act, allowing an inmate to personally file a motion for compassionate release after she has "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *accord Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Shkambi*, 993 F.3d at 391. Thus, upon fulfillment of the "exhaustion" requirement, the statute otherwise still provides that a court may reduce or modify a term of imprisonment, probation, or supervised release if it finds that (1) "extraordinary and compelling reasons" warrant a reduction; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) such a reduction is appropriate "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Guidelines also urge courts to consider whether the defendant is "a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)." U.S. SENT'G GUIDELINES MANUAL (U.S.S.G.) § 1B1.13 (U.S. SENT'G COMM'N 2018).

Commentary to the Sentencing Guidelines provides examples of what constitutes an "extraordinary and compelling" reason, which is otherwise undefined in the statute by Congress. This includes when "[t]he defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" such as "metastatic solid-tumor cancer," or "suffering from a serious physical or

4

medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(i–ii). However, "[a] specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required." *Id.* Because the Sentencing Commission's definition of "extraordinary and compelling reasons" was promulgated prior to the First Step Act and when such motions could be filed only by the BOP, the Fifth Circuit has recently held that this commentary is binding only on motions by the BOP, not prisoners. *Shkambi*, 993 F.3d at 392. However, the commentary should "still inform[] our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021). Thus, the Court's evaluation as to whether Milliron has presented "extraordinary and compelling reasons" to warrant a reduction in sentence will be significantly guided, though not strictly bound, by the commentary to the Sentencing Guidelines.

### III. DISCUSSION

**A. The Exhaustion Requirement**

Before requesting compassionate release through the Court, Milliron was required to "exhaust[] all administrative rights" with respect to a compassionate-release request to the warden or wait thirty days from the receipt of her request by the warden. 18 U.S.C. § 3582(c)(1)(A). Courts in the Fifth Circuit have found that a defendant fails to meet the exhaustion requirement when the defendant does not

attach proof of the request because this constitutes a failure to prove that the defendant actually made the request to the warden and that the requisite thirty days have passed since the warden received such a request. *See, e.g., United States v. Thomas*, No. 3:17-CR-0154, 2020 WL 6737872, at *1 (N.D. Tex. Nov. 16, 2020) (holding that inmate who asserted he had made "an electronic request" for compassionate release to the warden of his facility, but provided no proof of such a request, had not "proven that he made a request to the warden for compassionate release, nor that thirty days [had] passed since the warden received such a request").

The relevant BOP provisions require that a defendant's compassionate-release request to the warden include, "*at a minimum*," (1) "the extraordinary or compelling circumstances" warranting compassionate release; and (2) "[p]roposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment." 28 C.F.R. § 571.61 (2021) (emphasis added). Based on these provisions, courts have held that, where the defendant fails to include a proposed release plan in his compassionate-release request to the warden, the defendant fails to exhaust administrative remedies. *See, e.g., United States v. Reynard*, No. 10-329, 2021 WL 2662139, at *3–4 (E.D. La. June 29, 2021); *United States v. Williams*, No. 3:07-CR-0285, 2020 WL 3843737, at *2 (N.D. Tex. July 8, 2020).

Milliron contends, and the Government concedes, that she has met the exhaustion requirement. (Dkt. 54 at 2). However, the Court disagrees, as there are several issues with Milliron's supposed satisfaction of the exhaustion requirement.

First, among the deficiencies in Milliron's compassionate-release motion, her counsel failed to provide a copy of the compassionate-release request Milliron was required to send to her warden prior to submitting a request to the Court. Indeed, counsel admitted that he had not even seen the request at the time the motion was filed and instead asked the Court to rely on Milliron's word—via email to her counsel—to prove that the request was submitted. (Dkt. #47 at 4). This failure to attach the request, standing alone, would render Milliron's request fatally defective because, without a copy of the request, there is no proof that Milliron sent the request to the warden or that thirty days passed before she filed her motion in this Court. *See Thomas*, 2020 WL 6737872, at *1. The Court has now received Milliron's request to the BOP, (Dkt. #59-1), but only after the Government provided such documents upon an order from the Court, (Dkt. #57). After receiving these materials, the Court learned for the first time that Milliron submitted not one, but two requests to the BOP, dated May 14 and May 29, 2021. (Dkt. #59-1).

Second, in her motion, Milliron claimed that the BOP never responded to her request for compassionate release. (Dkt. #47 at 4). Not so. In fact, the BOP responded to both of Milliron's requests on June 3 and June 7, 2021—prior to her motion to the Court. (Dkt. #54-1). Regardless, based on the documents the Court has now received, it is apparent that Milliron filed her motion thirty days after she sent her initial

7

compassionate-release request to the warden on May 14, 2021, as required by Section 3582(c)(1)(A).

But the contents of Milliron's request to the warden raise an issue as to her satisfaction of the exhaustion requirement. Milliron's compassionate-release requests to the warden failed to satisfy the requirements of 28 C.F.R. § 571.61 because she did not set out the requisite release plan. *See Williams*, 2020 WL 3843737, at *2. Milliron's May 14, 2021, request to the warden states that she has "a residence [she] can be released to and [she] will be applying for medical coverage for [her] treatment." (Dkt. #59-1 at 2). This does not come close to satisfying the minimum requirement that Milliron provide information regarding "where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment." 28 C.F.R. § 571.61.

Based on similar insufficiencies in other inmates' compassionate-release requests to their wardens, courts in this Circuit have denied defendants' requests, concluding that the thirty-day period does not begin with a deficient request to a warden. *See, e.g.*, *Williams*, 2020 WL 3843737, at *2 (finding that the defendant's request, which did not include a sufficient release plan, failed "to meet the minimum standards needed to initiate a request for compassionate release as required under § 571.61" and thus that the defendant's "request to the warden [was] deficient," and, "[a]s a result, the thirty-day exhaustion period did not begin."). Thus, although the Government conceded that Milliron satisfied the exhaustion requirement, the Court

8

concludes that Milliron's motion should be denied based on her deficient request to the warden.

**B. "Extraordinary and Compelling" Reasons**

In addition to her failure to meet Section 3582(c)(1)(A)'s exhaustion requirement, the Court also finds that Milliron—despite apparent and troubling efforts to mislead the Court—has not shown that extraordinary and compelling reasons exist warranting a reduction of her sentence. With the commentary to the Sentencing Guidelines as a guide in the Court's analysis, an "extraordinary and compelling" reason would be, inter alia, a terminal illness such as "metastatic solid-tumor cancer," or "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(i–ii).

Milliron's motion and subsequent briefing are replete with wildly inaccurate and misleading allegations regarding the supposed "extraordinary and compelling reasons" that she claims warrant a sentence reduction. According to Milliron, despite being diagnosed with late-stage cervical cancer, she has not received treatment while in custody and has also been denied necessary medications, resulting in a situation where she faces impending death. (Dkt. #47 at 5–6) (claiming that Milliron "has yet to start any treatment" while in custody, and that she is "quickly on her way to becoming one of the death statistics for 2021").

9

But Milliron's medical records tell a substantially different story. To begin with, Milliron has mischaracterized her cancer-stage diagnosis, a crucial factor in determining whether a defendant qualifies for compassionate release. While Milliron's motion, filed June 14, 2021, states that her stage of cancer had never been determined, subsequent briefing filed only eleven days later alleges that she suffers Stage III, likely soon-to-be Stage IV, cervical cancer. (Dkt. #51 at 1). This claim is unsupported—indeed contradicted—by medical records. In fact, in recent months—since at least March 2021 up to at least June 2021—Milliron has been diagnosed with Stage I cervical cancer. (Dkt. #55-1 at 395) (doctor's noting on March 2, 2021 that she "discussed with patient she [has] Stage IB2 (FIGO 2009) or 1B3 (FIGO 2018) cervical cancer"); (Dkt. #55-2 at 20) (BOP administrative note dated June 29, 2021, stating Milliron's provisional diagnosis was still Stage IB2 cervical cancer); *see also* (Dkt. #55-1 at 112, 160–61, 328, 341); (Dkt. #55-2 at 282).

A Stage I cancer diagnosis, for which Milliron is receiving care, does not constitute an "extraordinary and compelling reason" warranting compassionate release. *See, e.g.*, *United States v. Rangel-Sandoval*, No. 3:17-CR-0341, 2021 WL 2580502, at *4 (N.D. Tex. June 23, 2021) (finding that inmate's *Stage III* cervical cancer was not an "extraordinary and compelling reason" because "[t]here is no indication that [defendant] will receive better care for her conditions if released . . . or that her conditions involve degrees of necessity and urgency such that her immediate release is warranted"); *United States v. Bartmann*, No. 4:16-CR-00194, 2020 WL 5413010, at *1 (E.D. Ark. Sept. 8, 2020) (concluding that "a history of

10

prostate cancer, *early-stage* lung cancer, COPD, and low heart rate" are not health conditions that qualify as "extraordinary and compelling" reasons to warrant the defendant's release (emphasis added)).

Milliron has also mischaracterized the medical treatment offered to her while in custody. Contrary to Milliron's assertions that she has been denied treatment and prescribed medications, (Dkt. #47 at 2), the records before the Court show that Milliron *refused* treatment and medications on multiple occasions. Medical records submitted by both the Government and Milliron show a pattern of Milliron's refusal of treatment. On December 14, 2020, Milliron refused OB/GYN and psychiatric services. (Dkt. #48-1 at 63–64). On January 6 and January 7, 2021, Milliron refused to take medication. (Dkt. #48-1 at 59–60). On February 9, 2021, Milliron refused to go to a gynecology appointment. (Dkt. #48-1 at 56). On April 27, 2021, Milliron was noted to have "refused treatment for cancer" while in the Dallas County Jail. (Dkt #55-1 at 174). On April 29, 2021, Milliron admitted to "refus[ing] chemotherapy because she did not want to do treatments in the County Jail." (Dkt. #55-1 at 167). On May 18, 2021, Milliron refused testing and, when asked to wait until an exam room was available to discuss treatment, left after about fifteen minutes. (Dkt. #55-1 at 115). On May 19, 2021, Milliron requested pain medication, then left the clinic before such medication could be administered or her condition could be discussed. (Dkt. #55-1 at 110). On June 2, 2021, Milliron refused to properly finish taking medication. (Dkt. #55-1 at 33). And, tellingly, Milliron refused dental treatment on May 21, 2021, stating that "*she is scheduled for release in July* so she would wait to

11

see a private practice dentist," presumably banking on the success of her compassionate-release motion. (Dkt. #55-1 at 258) (emphasis added). Milliron is scheduled for release in February of 2025.

In sum, Milliron's allegations of late-stage, terminal cancer and gross medical negligence are simply false, and are directly contradicted by her medical records. Milliron's motion was misleading in its entirety, styled as an "emergency" and premised on the fictitious claim that she has been diagnosed with a terminal medical condition and the equally baseless allegation that she has received poor—or non-existent—medical treatment. (Dkt. #47 at 5–6) (claiming that Milliron "has yet to start any treatment" while in custody, and that she is "quickly on her way to becoming one of the death statistics for 2021"). Milliron and her attorney went so far as to insist that the Government not be permitted additional time to respond to her motion due to the "urgent" nature of her situation. (Dkt. #51 at 1). Specifically, Milliron and her counsel asserted that she is "currently diagnosed with Stage 3 cervical cancer" that was expected to soon be "upgraded to Stage 4." (Dkt. #51 at 1). These statements, which have been shown to be untrue, seem intended to mislead the Court. Given the nature of the relief requested by Milliron's compassionate-release motion, the gross distortions of the truth in Milliron's filings before this Court are particularly troubling.

For all of these reasons, Milliron's compassionate-release motion must be denied because she has not presented any "extraordinary and compelling reason" that would warrant a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

**C. Sentencing Factors in 18 U.S.C. § 3553(a)**

Section 3582(c)(1)(A) stipulates that, in addition to considering whether the defendant has exhibited "extraordinary and compelling reasons" to warrant release, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable. Further, the Court should take into account the defendant's potential danger to the community. U.S.S.G. § 1B1.13. The Court concludes that affording the defendant compassionate release just twenty months into her seventy-two-month term of imprisonment would not "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Now forty-one years old, Milliron has had frequent encounters with law enforcement since the age of eighteen. This includes multiple arrests and convictions for crimes related to theft, shoplifting, and possession of a controlled substance. (Dkt. #37 ¶¶ 80–85). At the time she was arrested for the instant offense, Milliron had eight pending charges, (Dkt. #37 ¶¶ 91–98), and was on probation, (Dkt. #37 ¶ 87). Based on her criminal history, likelihood to recidivate, and the seriousness of the crimes to which Milliron has pleaded guilty, the Court is not convinced that granting her compassionate release would effectively deter criminal conduct or "protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2).

Further, no concrete release plan has been provided for Milliron. Consistent with her failure to provide such information to the BOP connected with her

13

<mark>compassionate-release request, Milliron has not submitted a plan for where she will reside, how she will support herself, or where she will receive medical treatment and how she will pay for such treatment. Absent a release plan, the Court has no assurance that Milliron would be better situated from a medical-care standpoint if she were granted compassionate release. *See, e.g.*, *United States v. Brady*, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at * (S.D.N.Y. May 15, 2020) (denying compassionate-release motion because the defendant offered "no substantive rationale for why he would be any better off [health-wise] at his home"). Nor is there any assurance that granting Milliron's motion, with a nonexistent release plan, would adequately reduce the risk she presents to the public of committing further crimes. *See, e.g.*, *United States v. Powell*, 468 F.Supp.3d 398, 405 (D.D.C. 2020) (conditionally granting compassionate-release motion upon condition that the defendant present and the court approve a final release plan).</mark>

Thus, the Court's consideration of the sentencing factors set forth in Section 3553(a) confirms that Milliron should not be granted compassionate release.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Stephanie Leigh Milliron's Emergency Motion to Reduce Sentence Under the Federal Compassionate Release Statute, (Dkt. #47), is hereby **DENIED without prejudice**.

**So ORDERED and SIGNED this 19th day of July, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE